**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JUSTIN DANIEL NISSEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 3:13-00842** |
| | ) | **Judge Trauger/Brown** |
| **COUNTY OF SUMNER, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**To: The Honorable Aleta Trauger, United States District Judge**.

## REPORT AND RECOMMENDATION

For the reasons explained herein, the Magistrate Judge **RECOMMENDS** that: **1)** the motion for summary judgment filed by the County of Sumner, Lt. David Fitch, Officers Ronald Hopkins and Derick Case (Doc. 142) be **GRANTED**; **2)** this case be **DISMISSED WITH PREJUDICE** as to plaintiff's federal claims; **3)** plaintiff's request that the court exercise its supplemental jurisdiction **BE DENIED**; **4)** this case be **DISMISSED WITHOUT PREJUDICE** as to whatever relief plaintiff may be entitled to in state court on his state law claims; **5)** acceptance and adoption of this Report and Recommendation (R&R) constitute the **FINAL JUDGMENT** in this action.

## I.  INTRODUCTION
## and
## BACKGROUND

Plaintiff, proceeding *pro se*, is an inmate in the Sumner County Jail (SCJ).  He brought this action on August 23, 2013 under 42 U.S.C. § 1983 against the following defendants: 1) The County of Sumner; 2) Sonny Weatherford, Sheriff of Sumner County; 3) Sonya Troutt, SCJ Administrator; 4) Lt. David Fitch, SCJ; 5) Officer Ronald Hopkins, SCJ; 6) Officer Derick Case, SCJ.  (Doc. 1)

Plaintiff alleges that Lt. Fitch and Officers Case and Hopkins (hereinafter "the officer defendants") used excessive force against him in violation of his rights under the Fourth and Fourteenth Amendments while he was awaiting release on bond from SCJ on August 26, 2012, and

that the officer defendants also are liable under Tennessee law for assault and battery. Plaintiff alleges that the County of Sumner is liable under § 1983 for the "unskillfulness" of the officer defendants, and for violating the statutory provisions of § 11-47-190. Plaintiff seeks to invoke the court's supplemental jurisdiction. The facts of the case are discussed below at pp. 8-16.

## II. PROCEDURAL HISTORY

The District Judge referred this matter to the Magistrate Judge on August 28, 2013. (Doc. 4) The Magistrate Judge was instructed to enter a scheduling order for the management of the case, to dispose of, or recommend disposition of, any pre-trail motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P. and the Local Rules of Court. (Doc. 4)

Plaintiff filed a motion to amended the complaint on September 4, 2013. (Doc. 6) The motion was granted on September 10, 2013. (Doc. 8) Plaintiff amended the complaint only to the extent that he changed the date of the alleged events that gave rise to this action from August 25, 2012 to August 26, 2012. (Doc. 6)

The defendants answered the complaint on September 13, 2013. (Doc. 11) That same day, September 13th, Sheriff Weatherford and SCJ Administrator Troutt filed a motion to dismiss. (Doc. 12) Plaintiff responded in opposition to the motion on October 29, 2013. (Doc. 25) Sheriff Weatherford and SCJ Administrator Troutt replied on November 12, 2013. (Doc. 28)

The Magistrate Judge entered a R&R on July 22, 2014 recommending that the motion to dismiss be granted. (Doc. 93) Plaintiff did not object to the R&R. On August 19, 2014, the District Judge accepted the R&R, adopted the findings of fact and conclusions of law, and dismissed the case with prejudice against Sheriff Weatherford and SCJ Administrator Troutt. (Doc. 103)

The County of Sumner, Lt. Fitch, and Officers Hopkins and Case[1] filed a motion for summary judgment on November 14, 2014. (Doc. 142) In response, plaintiff filed a document on December 15, 2014 captioned, "PLAINTIFF'S MOTION TO OPPOSE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT." (Doc. 152) The defendants replied on December 30, 2014. (Doc. 163) This matter is now properly before the court.

### III. ANALYSIS

### A. Actions Under § 1983

To state a claim under § 1983, plaintiff must allege and show: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was caused by a person acting under color of state law. *Wershe v. Combs*, 763 F.3d 500, 504-05 (6th Cir. 2014)(citing *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010)). Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### B. Summary Judgment

Summary Judgment is appropriate only where "there is no genuine issue as to any material fact . . . and the moving party is entitled to summary judgment as a matter of law." Rule 56(c), Fed. R. Civ. P.; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Sierra Club v. ICG Hazard, LLC*, __ F.3d __, 2014 WestLaw 7688609 at *2 (6th Cir. 2015). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 249-50. "Where the record taken as a

---

[1] The remaining four defendants in this action, *i.e.*, the County of Sumner, Lt. Fitch, Officers Hopkins and Case are referred to collectively herein as "the defendants."

whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(quoting *First Nat. Bank of Arizona v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In considering whether summary judgment is appropriate, the court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon County*, 203 F.3d 426, 431 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000).  If there is a genuine issue of material fact," then summary judgment should be denied.  *Sowards*, 203 F.3d at 431.  However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001)(quoting *Celotex Corp.*, 477 U.S. at 325).  "A 'mere scintilla' of evidence is not enough for the non-moving party to withstand summary judgment." *U.S. ex. Rel. Wall v. Circle C Const., L.L.C.*, 697 F.3d 345, 351 (6th Cir. 2012)(quoting *La Quinta Corp. v. Heartland Prop.*, LLC, 603 F.3d 327, 335 (6th Cir. 2010)(citing *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006)).

### C.  Plaintiff's Claims

### 1.  The Officer Defendants

### a.  Fourth Amendment

The complaint alleges that the officer defendants used excessive force against him in violation of his rights under the Fourth Amendment.  (Doc. 1, pp. 5-7)  The defendants argue in their motion for summary judgment that the Fourth Amendment does not apply because plaintiff was a pretrial detainee at the time of the alleged events that gave rise to this action and, as such, his claim is covered by the Fourteenth Amendment.  (Doc. 142, p. 2; Doc. 143, pp. 9, 18-20)

In his one hundred seven (107) page response to the motion for summary judgment, plaintiff

repeats the summary judgment standard, summarizes some of the law relevant to federal civil cases, recaps the case as he sees it, highlights those areas where he agrees with the defendants, and those where he does not, and files numerous documents already before the court. The defendants argue in their reply that plaintiff did not respond to the merits of the legal arguments in their motion, nor did he offer any "probative evidence to prove his allegations." (Doc. 163, p. 1) A plain reading shows that the defendants' characterization of plaintiff's response is correct.

Although *pro se* complaints are held to less stringent standards than complaints prepared by an attorney, *see Boag v. MacDougall*, 454 U.S. 364, 365 (1982), the courts are not willing to "abrogate basic pleading essentials in *pro se* suits," *see Clark v. Johnston*, 413 Fed.Appx. 804, 817 (6th Cir. 2011)(internal citation omitted). Nor are the courts required to conjure up unpled facts to support conclusory pleadings. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004)(citations omitted). Although the defendants are entitled to summary judgment because plaintiff has failed to carry his burden of proof/persuasion on summary judgment, the Magistrate Judge will address each of plaintiff's claims for the sake of completeness, beginning with his Fourth Amendment claim.

Plaintiff was arrested for disorderly conduct on August 25, 2012, the inference being that he was arrested without a warrant. (Doc. 1, ¶ 9, p. 3) The Fourth Amendment protects those arrested without a warrant through the completion of their probable-cause hearing. *See Aldini v. Johnson*, 609 F.3d 858, 864-67 (6th Cir. 2010).

Sonya Troutt, SCJ Administrator, represented in her sworn declaration that "Plaintiff was brought into the Sumner County Jail as a pretrial detainee." (Doc. 142, Ex. E, ¶ 3, p. 1) "Pretrial detainee" is a term of art in the context of the Fourth and Fourteenth Amendments. Although there may be some exceptions where one is taken into custody as a pretrial detainee, *e.g.*, where one is taken into custody for violating the terms of a prior release with respect to which a probable cause

hearing has already been held, one generally is not taken to jail as a pretrial detainee. Because of the uncertainty created by SCJ Administrator Troutt's statement, the Magistrate Judge turns to the facts alleged.

Plaintiff asserts throughout the record that the alleged events that gave rise to this action occurred after he had made bond and was waiting to be released on charges of disorderly conduct. That plaintiff was awaiting release on bond implies that there had been a probable cause hearing on those charges with respect to which he was taken into custody on August 25th, *i.e.*, charges of disorderly conduct. Because it may be inferred from these facts that plaintiff had a probable cause hearing on the August 25th charges of disorderly conduct, he was a pretrial detainee with respect to those charges. Consequently, his excessive force claim arises under the Fourteenth Amendment and not the Fourth Amendment. The officer defendants are entitled to summary judgment with respect to plaintiff's Fourth Amendment claim.

### b. Fourteenth Amendment

The complaint also alleges that the officer defendants used excessive force against him in violation of his rights under the Fourteenth Amendment. (Doc. 1, ¶ 15.c, p. 6) The defendants argue in their motion that the actions of the officer defendants were reasonable and not excessive. Therefore, the officer defendants are entitled to qualified immunity. Plaintiff's response, and the defendants' reply, are as previously noted above at p. 5.

"Typically, the Fourteenth Amendment's Due Process Clause protects pretrial detainees from excessive force that amounts to punishment." *Shreve v. Franklin County, Ohio*, 743 F.3d 126, 133 (6th Cir. 2014). "[T]o constitute a Fourteenth Amendment violation, an official's conduct must 'shock[] the conscience.'" *Shreve*, 743 F.3d at 133 (*citing Burgess v. Fischer*, 735 F.3d 462, 473 (6th Cir. 2013)). However, "when officials respond to 'a rapidly evolving, fluid, and dangerous

predicament,' the Fourteenth Amendment's excessive-force standard is the same as the Eighth

Amendment's: '[T]he plaintiff must show that the defendant acted maliciously and sadistically for

the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline.'"

*Burgess*, 735 F.3d at 473 (internal quotation marks omitted).

Qualified immunity shields government officials performing discretionary functions from

"liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Feathers v. Aey*, 319 F.3d

843, 847 (6th Cir. 2003)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified

immunity does not serve merely as a defense against liability to be asserted during litigation.

*Saucier v. Katz*, 533 U.S. 194, 200–01 (2001).  It offers "an entitlement not to stand trial or face the

other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

 A defendant enjoys qualified immunity on summary judgment unless the facts alleged and

the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a

reasonable juror to find that: 1) the defendant violated a constitutional right; and 2) the right was

clearly established. *See Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014)(citing *Saucier*, 533

U.S. at 201.  A right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that

a reasonable official would understand that what he is doing violates that right." *Anderson v.

Creighton*, 483 U.S. 635, 640 (1987). Thus, the relevant inquiry is "whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S.

at 202.

Because "[q]ualified immunity is an affirmative defense . . . [t]he defendant bears the burden

of pleading" it in the first instance.  *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). The burden

then shifts to the plaintiff, who must show that the official violated a right so clearly established

"that every reasonable official would have understood that what he [was] doing violate[d] that right." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011); *Sheets*, 287 F.3d at 586; *Dominque v. Telb*, 831 F.2d 673, 676–77 (6th Cir.1987). The plaintiff "bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity." *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005). If the plaintiff fails to carry this burden as to either element of the analysis, qualified immunity applies and the state official is immune against the plaintiff's suit.

The officer defendants pleaded qualified immunity as an affirmative defense in their answer (Doc. 11, ¶ 9, p. 7), and at length as grounds for summary judgment (Doc. 142, p. 2; Doc. 143, pp. 10-15). Therefore, the burden shifts to plaintiff under *Sheets* to show that the officer defendants are not entitled to qualified immunity.

### (1) Plaintiff's Case

Plaintiff asserts in his complaint that he was arrested on August 25, 2012 and "taken to the Sumner County Jail . . . on a charge of disorderly conduct." (Doc. 1, ¶ 9, p. 3) He testified at his deposition that this was the twenty-seventh time he had been arrested and jailed in SCJ. (Doc. 142, Ex. A, p. 6 of 10)

Plaintiff claims that he broke his right hand ten days before his arrest (Doc. 1, ¶¶ 6-8, pp. 2-3), and that he had been given a splint to use (Doc. 142, Ex. C, p. 3 of 21). Plaintiff admitted at his deposition that he was not wearing the splint at the time of his arrest – it had gotten wet and was in the dryer at home. (Doc. 142, Ex. C, p. 3 of 21) Although plaintiff told the arresting officers he had a broken hand, they handcuffed him anyway before transporting him to SCJ. (Doc. 142, Ex. C, pp. 3-4 of 21) The arresting officers are not defendants to this lawsuit.

Plaintiff testified at his deposition that he "wrote" his hand was broken "on the screen-in form" during intake. (Doc. 142, Ex. C, p. 4 of 21) The record shows that plaintiff circled both

8

"YES" and "NO" on the screening form in response to the question, "HAVE YOU RECENTLY BEEN HOSPITALIZED," writing in the space provided, "broke hand." (Doc. 142, Ex. B, p. 2 of 2) Plaintiff admitted that he did not tell the officer defendants that his hand was broken; he relied on the notation on the screening form to make them aware. (Doc. 142, Ex. C. pp. 4-5 of 21)

Plaintiff testified at his deposition that he was waiting to be released on bond at the time of the alleged events that gave rise to this action. (Doc. 142, Ex. C, p. 7 of 21) Plaintiff admitted that, while awaiting release, he "may have" yelled "a couple of times" from his holding cell to his girlfriend who was in the holding cell next to his. (Doc. 142, Ex. C, pp. 8-9 of 21) Plaintiff acknowledged at his deposition that he was aware "[t]hey don't want you talking to other people . . . ." (Doc. 142, Ex. C, p. 7 of 21)

Plaintiff testified at his deposition that Lt. Fitch – accompanied by Officer Hopkins – came into his holding cell and told him to "[s]it down and shut the fuck up," but that it was "hard for [him] to remember the actual words that were exchanged." (Doc. 142, Ex. C, pp. 8-9 of 21) Plaintiff admitted that he "hollered" back at Lt. Fitch and Officer Hopkins. (Doc. 142, Ex. C, p. 8 of 21) Plaintiff acknowledged in his deposition that it was important to follow instructions and, if an officer gave a verbal command, he was required to obey the command. (Doc. 142, Ex. A, p. 3 of 10)

Lieutenant Fitch and Officer Hopkins left plaintiff's holding cell after the events described above. Plaintiff testified that he then left the holding cell to "talk[] to the bonding guy," following which he returned to his cell where he then tried to obtain information from "somebody at the computer . . . ." (Doc. 142, Ex. C, p. 10 of 21) Plaintiff admitted asking, "'[W]hat's going on?'" (Doc. 142, Ex. C., p. 20 of 21) Plaintiff testified further that he " was not yelling," but he was "asking them if they c[ould] hurry up." (Doc. 142, Ex. C, p. 20 of 21) He testified further that he "might have been" kicking the door and/or hitting it with his hands, but he "wasn't [doing it]

9

violently." (Doc. 142, Ex. F, p. 3 of 4)

Plaintiff testified that Lt. Fitch and Officer Hopkins reentered his cell and told him again to "'[s]it down and shut the fuck up,'" to which plaintiff admits he answered, "I am fucking sitting down. What do you want me to do?" (Doc. 142, Ex. C., pp. 10-11 of 21) Plaintiff denied being combative,[2] but admitted that he swore at Lt. Fitch. (Doc. 142, Ex. C, p. 11 of 21)

Plaintiff testified that Lt. Fitch and Officer Hopkins "[we]re talking to [him] . . . went to walk out, and they just – they changed their mind . . . turned around . . . and yanked me up . . . ." (Doc. 142, Ex. C, p. 11 of 21) Later in his deposition plaintiff explained why Lt. Fitch and Officer Hopkins may have changed their mind:

> Q. When you were in the sergeant's area, the booking area, were you ever warned that if you didn't stop yelling, they were going to take you to Classification?
>
> A. No. I mean, I think I was warned. They probably said, 'if you don't sit down and shut up, you're not leaving,' or something, telling me that I'm not going to leave the jail. And then I might have said, 'You can't' . . . ' You can't make me.' I said, 'I'm getting out of here. You can't keep me here. You can't make me stay here.' And I think that made them mad. That's why they did the double-take.
>
> . . .
>
> A. I didn't say, 'I don't give a' __ but I said – and it wasn't like, 'You-all can't tell me what to do.' It was, 'you-all can't keep me here. I'm leaving.' And when I said that, that made them mad. I think that – I think, honestly, when I said that – I think that's when he was walking out . . . and that's when he said – he did a double-take and they came in and grabbed me up.

---

[2] Lt. Fitch confirmed in his deposition that plaintiff was not acting in a combative manner, but that he was acting out verbally. (Doc. 142, Ex. G, p. 3 of 6)

(Doc. 142, Ex. C, pp. 19-20 of 21)

Plaintiff testified that, when Lt. Fitch and Officer Hopkins removed him from his cell, they "pulled [his] arms behind [his] back," and "did this thing with [his] wrists where they ben[t] [them] back . . . really hard." (Doc. 142, Ex. C, p. 12 of 21) Plaintiff testified that "at that point [he was] hollering, My hand is broke, my hand is broke, my hand is broke. You're hurting me." (Doc. 142, Ex. C, p. 13 of 21) Although plaintiff admitted that "stuff [wa]s coming out of [his] mouth," *i.e.*, profanity, he again denied being combative as he was escorted from the sergeant's office and releasing area. (Doc. 142, Ex. C, p. 13 of 21)

Plaintiff testified that he fell as Lt. Fitch and Officer Hopkins were escorting him. (Doc. 142, Ex. C, pp. 14-15) Plaintiff testified at first that he did not trip over his pants. (Doc. 142, Ex. C, p. 13 of 21) Plaintiff then testified that he could have tripped over his pants, but only because Lt. Fitch pushed him. (Doc. 142, Ex. C, pp. 13-14 of 21) Plaintiff could not remember how hard Lt. Fitch pushed him, but insisted that he was pushed when he stopped because his pants had fallen. (Doc. 142, Ex. C, p. 14 of 21)

Plaintiff described his actions as follows after he fell and was on the floor: "What I'm trying to do throughout this whole time, throughout everything, is I'm trying to get my hands in front of me . . . to get my hands out of this lock." (Doc. 142, Ex. C, p. 15 of 21) Plaintiff admitted that he was "struggling [and] pushing against the guards," and "hollering at the top of [his] lungs, 'my hand is broke. You are hurting me. You're killing me. I'm in so much pain. Please stop. Please stop. I'm not going to fight. Please stop.'" (Doc. 142, Ex. C, p. 15 of 21) After testifying on the one hand that he was struggling and pushing against the officers, he claimed again that he was "not being combative." (Doc. 142, Ex. C, p. 16 of 21)

Plaintiff testified that he was lifted off the floor and taken to cell 7, where Officer Case "manhandle[d] the crap out of [him]" by slamming him up against the wall, putting him in a choke

11

hold, taking him to the ground, and threatening him with spray. (Doc. 142, Ex. C, p. 16 of 21)

Plaintiff testified at first that he did not get a "free hand" while in cell 7. (Doc. 142, Ex. C, p. 17 of

21) He then changed his testimony stating, "I did get a free hand at one point, but I wasn't using

it to do anything." (Doc. 142, Ex. C, p. 18 of 21) Plaintiff testified that Officer Case finally

"pull[ed] his spray out" and threatened to spray him at which time plaintiff ceased struggling. (Doc.

142, Ex. C, pp. 16-17 of 21)

### (2) The Defendants' Case

A copy of the jail security video filed by the defendants under seal shows the following

initial events in the sequence they occurred: 1) plaintiff pacing back and forth in cell 508 for more

than two minutes, looking repeatedly out the window often in the direction of Lt. Fitch who, as

Officer Hopkins goes back and forth through the area, is seated at a desk just outside cell 508 with

his back to plaintiff; 2) Lt. Fitch going to the door of cell and talking to plaintiff; 3) Lt. Fitch

deciding a few moments later to open the cell door; 4) plaintiff again up and moving around in the

cell; 5) Lt. Fitch opening the cell door with Officer Hopkins in attendance; 6) Lt. Fitch entering the

cell with Officer Hopkins remaining in the doorway; 7) Lt. Fitch twice pointing his finger at plaintiff

and saying something to him;[3] 8) Lt. Fitch turning to leave the cell as Officer Hopkins backs away

from the door; 9) Lt. Fitch suddenly turning back and reentering the cell followed by Officer

Hopkins; 10) Lt. Fitch and Officer Hopkins pulling plaintiff up/toward them and removing him from

the cell. (Doc. 142, Ex. I, *Sgt. Office and Releasing*, § 07:51: 29 and § 07:56:39, time 7:46:29.619

to 7:57:16.525)

The security video shows Lt. Fitch and Officer Hopkins escorting plaintiff from the

sergeant's office and releasing area. (Doc. 142, Ex. I, *Sgt. Office and Releasing*, § 07:56:39, time

---

[3] The security video has no audio.

7:57:16.791 to 7:57:19.025) Although the security video does not reveal the instant in time when Lt. Fitch and Officer Hopkins first laid hands on him, the security video does show Lt. Fitch removing plaintiff from the cell and escorting him out of the sergeant's office and releasing area controlling plaintiff by his left hand, palm facing up, plaintiff's left arm extended straight to the rear. The security video shows Officer Hopkins controlling plaintiff on the right side having hooked his left arm under plaintiff's right arm. Plaintiff's right arm also is extended straight to the rear. Neither Officer has hold of plaintiff's right hand. (Doc. 142, Ex. I, *Sgt. Office and Releasing*, § 07:56:39, time 7:57:19.025 to 7:57:25.322) Plaintiff's demeanor does not appear to be that of someone in pain. The security video also shows that plaintiff's pants had slipped a couple of inches as he exited the cell, and that they were about to slip below his buttocks just prior to exiting the sergeant's office and releasing area. (Doc. 142, Ex. I, *Sgt. Office and Releasing*, § 07:56:39, time 7:57:19.760 and 7:57:21.291) The security video also shows that a third officer joined Lt. Fitch and Officer Hopkins as they escorted plaintiff from the area. (Doc. 142, Ex. I, *Sgt. Office and Releasing*, § 07:56:39, time 7:57:25.822 to 7:57:29.978)

The second part of the security video shows plaintiff entering the prisoner entrance and sally area. (Doc. 142, Ex. I, *Prisoner Entrance and Sally*, § 07:54:12, time 7:57:39.213) The security video shows that Lt. Fitch has adjusted his hold on plaintiff and, although he still has plaintiff by the left hand, he has pushed plaintiff's left arm up and toward the center of his back in what plaintiff refers to as a "chicken wing hold." (Doc. 142, Ex. I, *Prisoner Entrance and Sally* – § 07:54:12, time 7:57:41.244) Officer Hopkins still is controlling plaintiff on the right side, but it is unclear from this part of the security video whether Officer Hopkins has hold of plaintiff's right hand. (Doc. 142, Ex. I, *Prisoner Entrance and Sally*, § 07:54:12, time 7:57.40.447 to 7:57.44.650) The third officer does not have hands on plaintiff. Plaintiff's pants slip from knee level to his ankles as he is escorted through the incoming and holding area. (Doc. 142, Ex. I, *Prisoner Entrance and Sally*, § 07:54:12,

time 7:57:41.807 to 7:57:45.119)

The third part of the security video shows plaintiff being escorted into the holding cell and incoming area beyond. (Doc. 142, Ex. I, *Holding Cell/Incoming*, § 07:57:04, time 7:57:45.510) This part of the security video shows that Lt. Fitch has maintained his "chicken wing hold" on plaintiff, and that Officer Hopkins is <u>not</u> using plaintiff's right hand to control him as plaintiff's right arm can be seen fully extended down at his side. (Doc. 142, Ex. I, *Holding Cell/Incoming*, § 07:57:04, time 7:57:48.682 to 7:57:49.307) The third officer follows closely behind. Plaintiff's pants remain down at his ankles.

Plaintiff's knees can be seen to buckle just as he goes through the door from the holding cell into the incoming area. (Doc. 142, Ex. I, *Holding Cell/Incoming*, § 07:57:04, time 7:57:51.541) The security video shows Lt. Fitch in the same position relative to plaintiff when the latter begins to fall as he was when they passed from holding cell into the incoming area. (Doc. 142, Ex. I, *Holding* (Doc. 142, Ex. I, *Holding Cell/Incoming*, § 07:57:04, time 7:57:48.682 to 7:57:51.682*)* It cannot be determined from the security video whether Lt. Fitch pushed plaintiff, or whether plaintiff merely tripped over his pants over which plaintiff appears to stumble at the time he falls. Lt. Fitch testified at his deposition that he did not notice plaintiff's pants were down around his ankles until after everyone got off the floor, but not before. (Doc. 142 Ex. G, p. 4 of 6) Officer Hopkins remains on plaintiff's right side.[4] The third officer continues to follow at a distance.

Lt. Fitch testified that, as plaintiff began to fall, he and Officer Hopkins tried to hold him up, but that plaintiff pulled them to the ground. (Doc. 142, Ex. G, p. 5 of 6) The security video

---

[4] The security video establishes that the total lapsed time from when Lt. Fitch and Officer Hopkins first put hands on plaintiff in cell 508 to the time he fell in holding was thirty-five seconds – twelve-plus seconds in the sergeant's office and releasing area, six-plus seconds passing through the prisoner entrance and sally area, and seven-plus seconds in the holding cell and incoming area prior to plaintiff's fall. Officer Keith Bean, SCJ Internal Affairs, stated in his declaration that the camera covering the hallway and booking area, *i.e.*, the missing nine seconds, was not working at the time. (Doc. 142, Ex. H, ¶ 5, p. 2) There is nothing in the record before the court that suggests anything different occurred during the missing nine seconds from what plaintiff already has alleged.

shows that Lt. Fitch and Officer Hopkins remain upright initially as plaintiff begins to fall. (Doc. 142, Ex. I, *Holding Cell/Incoming*, § 07:57:04, time 7:57:51.682) As he continues to fall, plaintiff pulls Lt. Fitch down with the latter ultimately landing on the floor behind plaintiff as plaintiff lands on his left side. (Doc. 142, Ex. I, *Holding Cell/Incoming*, § 07:57:04, time 7:57:51.838 to 7:57:52.947) The security video shows Officer Hopkins take a wide stance to brace himself, but plaintiff's momentum pulls him down as well. (Doc. 142, Ex. I, *Holding Cell/Incoming*, § 07:57:04, time 7:57:51.838) Officer Hopkins lands on his knees falling across plaintiff's right shoulder, rolling plaintiff onto his back in the process. (Doc. 142, Ex. I, *Holding Cell/Incoming*, § 07:57:04, time 7:57:52.338 to 7:57:53.541) Again, the third officer remains at a distance.

The security video shows two other officers enter the room as plaintiff struggles with Officer Hopkins, bringing the total number of officers in the room to five. (Doc. 142, Ex. I, *Holding Cell/Incoming*, § 07:57:04, time 7:57:52.478 to 7:57:53.541) The security video shows plaintiff struggling against Officer Hopkins, at one point nearly throwing him off. (Doc. 142, Ex. I, *Holding Cell/Incoming*, § 07:57:04, time 7:57:54.338 to 7:57:59.603) One of the two officers who entered the room moves to relieve Lt. Fitch of his hold on plaintiff's left arm, and the second officer holds plaintiff's legs down as plaintiff struggles on the floor. (Doc. 142, Ex. I, *Holding Cell/Incoming*, § 07:57:04, time 7:57:54.838 to 7:58:03.213) Lt. Fitch regains his feet, moves around plaintiff, and assists in holding plaintiff's legs down. (Doc. 142, Ex. I, *Holding Cell/Incoming*, § 07:57:04, time 7:57:55. 978 to 7:58:04.541) The security video shows that only Officer Hopkins is ever on top of plaintiff; the other officers remain on their feet as they assist. Again, the third officer remains at a distance. The security video shows Officers Hopkins and Case pull plaintiff to his feet within 45 seconds of his fall and escort him beyond the view of the camera. (Doc. 142, Ex. I, *Holding Cell/Incoming*, § 07:57:04, time 7:58:32.900 to 7:58:37.103)

Officer Case testified at his deposition that he responded to the commotion and, when arrived

on the scene, plaintiff already was on the floor. (Doc. 412, Ex. J, p. 3 of 13) Officer Case testified

that he did not know whether plaintiff was "squirming because [he] w[as] hurt or squirming because

[he] w[as] just trying to get away . . . ." (Doc. 142, Ex. J, p. 4 of 13) Officer Case testified further

that he viewed plaintiff as a threat because of the circumstances. (Doc. 142, Ex. J, p. 5 of 13)

Officer Case testified that he took plaintiff's left arm from Lt. Fitch and, together with

Officer Hopkins, stood plaintiff up. (Doc. 142, Ex. J, p. 3 of 13) Officer Case testified that plaintiff

refused repeatedly to comply with instructions after they got him into a cell. (Doc. 142, Ex. J, pp.

5-6 of 13) More particularly, officer Case testified that, when plaintiff was escorted to the cell to

be handcuffed, plaintiff turned around, pushed Officer Case off, and Officer Case lost control of

plaintiff's left arm. (Doc. 142, Ex. J, pp. 6-7 of 13) Officer case then grabbed plaintiff around his

head and left arm to regain control. (Doc. 142, Ex. J, pp. 6-8 of 13) Plaintiff stopped resisting only

when Officer Case threatened to spray him. (Doc. 142, Ex. J, p. 8 of 13)

### (3) Conclusion

Plaintiff admitted that he knew he was not supposed to talk to other inmates, but he yelled

at least twice to his girlfriend in the next cell. Plaintiff admitted that he was pressuring the staff to

hurry up with his release, and that he "might have" hit/kicked his cell door for emphasis. Plaintiff

admitted that he knew he was supposed to follow instructions from the staff, but he refused to do

so after being told by Lt. Fitch at least twice to sit down and be quiet. Plaintiff admitted that he

swore at Lt. Fitch. Plaintiff also admitted that he swore at Lt. Fitch and Officer Hopkins as they

escorted him from the sergeant's office and releasing area, even though the security video shows that

neither Lt. Fitch nor Officer Hopkins had hold of his right hand.

Next, plaintiff asserts that he might have tripped over his pants, but only because Lt. Fitch

pushed him. The security video does not support plaintiff's claim that Lt. Fitch pushed him. On the

contrary, the security video supports the conclusion that plaintiff fell because he tripped over his

16

pants. Neither can Lt. Fitch be deemed accountable for not noticing in the few seconds preceding the fall that plaintiff's pants had fallen down around his ankles. The security video does not show whether Officer Hopkins had shifted his hold to plaintiff's right hand while the latter was on the floor, but the security video does show that Officer Hopkins was not controlling plaintiff by the right hand up to and including the time of plaintiff's fall. Plaintiff admitted – and the security video confirms – that he struggled and pushed against the officers when he was on the ground in an effort to get his hands in front of him, *i.e.*, to free his hands.

Finally, plaintiff admitted that he did, in fact, manage to get a hand free when Officers Hopkins and Case took him to a cell to handcuff him, and that he did not stop struggling until Officer Case threatened to use chemical spray on him. These admissions establish that plaintiff continued to struggle after Officers Hopkins and Case escorted him to cell 7.

The evidence supports the conclusion that the officer defendants acted in a good faith effort to maintain and restore discipline, not maliciously and sadistically for the purpose of causing harm. In short, there is no Fourteenth Amendment violation. Because there is no underlying constitutional violation, the officer defendants are entitled to summary judgment on grounds of qualified immunity.[5]

### 2. County of Sumner

As shown above, there is no underlying constitutional violation attributable to the officer defendants. Because plaintiff has failed to satisfy the first part of the two-part test necessary to establish a violation under § 1983 as to the officer defendants, there is no wrong doing to impute to the County of Sumner and, as such, the County of Sumner has no liability under § 1983.

---

[5] The Magistrate Judge is of the opinion that, even if it were determined on subsequent review that plaintiff was not a pretrial detainee, the actions of the officer defendants described were "objectively reasonable" under the Fourth Amendment, *see Cass v. City of Dayton*, 770 F.3d 368, 377 (6th Cir. 2014)(citing *Graham v. Conner*, 490 U.S. 386, 397 (1989), and that they would be entitled to qualified immunity under a Fourth Amendment analysis as well.

Assuming for the sake of argument that it were determined upon subsequent review that the officer defendants did violate plaintiff's rights under either the Fourth or Fourteenth Amendment, the result is the same. First, the complaint alleges that the County of Sumner is liable to plaintiff under §1983 because it "employed" officers Fitch, Case, and Hopkins "as correctional officers, who, were working in the line and scope of their employment . . . at the County Jail." (Doc. 1, ¶ II.5, p. 2) As the Magistrate Judge pointed out in his previous R&R, "Section 1983 does not provide for liability under the theory of *respondeat superior*." (Doc. 93, ¶ II.B.2, pp. 4-5). As previously noted above at p. 2, the District Judge accepted and adopted that R&R. (Doc. 103)

The complaint also alleges that the County of Sumner is liable because it is the "policy, practice and custom of the County of Sumner to inadequately supervise and discipline law enforcement officers who use excessive force." (Doc. 1, ¶ III.15.b, p. 6) However, plaintiff testified at his deposition that he had no personal knowledge of the County of Sumner's policies and procedures with respect to how correctional officers are trained and supervised. (Doc. 142, Ex. A, pp. 3-5 of 10) In short, apart from his subjective opinions, plaintiff has not provided even a "scintilla" of evidence in support of this claim.

Equally important as plaintiff's failure to provide any evidence and/or argument to support this claim is SCJ Administrator Troutt's sworn declaration in which she states that "[a]ll correctional officers, including the [Officer] Defendants, are trained in the continuum of force." (Doc. 142, Ex. E, ¶ 4, p. 1) Sumner County Jail Administrator Troutt identified the continuum of force doctrine as follows: 1) officer presence; 2) verbal commands; 3) soft hands; 4) chemical weapon; 5) hard hands (tactical strikes); 6) intermediate weapons such as ASP expandable batons used only by corrections officers trained in its use; 7) deadly force. (Doc. 142, Ex. E, ¶ 4, pp. 1-2) The evidence shows that the officer defendants complied with steps 1) through 4) of the force continuum in the prescribed order, and did not deviate from it.

For the reasons explained above, the County of Sumner is not liable under § 1983 for the actions of the officer defendants. Accordingly, the County of Sumner is entitled to summary judgment.

### 3. Plaintiff's State Law Claims

The complaint alleges that the County of Sumner is liable under state statute "11-47-190." (Doc. 1, pp. 7-8)  The defendants argue in their motion for summary judgment that there is no such statute in the Tennessee Code.  (Doc. 142, pp. 2-3; Doc. 143, ¶ III, pp. 9, 21)  In his response, plaintiff "agrees that 11-47-190 cited was not a Tennessee cite, but rather regarding violation of Alabama's provision for municipal liability."  (Doc. 152, ¶ 8), p. 5 of 107)

The complaint also raises a "STATE LAW ASSAULT AND BATTERY" claim against the officer defendants in connection with his Fourth Amendment claim, and presumably his Fourteenth Amendment claim as well.  (Doc. 1, p. 5)  Although the defendants argue that plaintiff's state law assault and battery claim is part of his claim under § 11-47-190 (Doc. 142, pp. 2-3; Doc. 143, pp. 2, 9; Doc. 163, pp. 1-2), the complaint raises the two claims quite apart from one another. Therefore, the Magistrate Judge liberally construes the complaint to raise the state law assault and battery claim separately from his claim under § 11-47-190 and, for the sake of argument, that the assault and battery allegation arises under Tennessee law rather than Alabama law.

The alleged events that gave rise to this action occurred in the State of Tennessee, not Alabama. Alabama law is irrelevant to this case. As shown above, plaintiff has failed to show that he is entitled to relief under § 1983.  Because Alabama law is irrelevant, and because plaintiff has failed to state a claim under § 1983, the court has no reason to exercise its supplemental jurisdiction with respect to plaintiff's state law claims.  Therefore, this action should be dismissed as to plaintiff's state law claims without prejudice to whatever relief he might be entitled in Alabama and/or Tennessee state court.

### III.  CONCLUSION
### AND
### RECOMMENDATION

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that: **1)** the motion for summary judgment filed by the County of Sumner, Lt. David Fitch, Officers Ronald Hopkins and Derick Case (Doc. 142) be **GRANTED**; **2)** this case be **DISMISSED WITH PREJUDICE** as to plaintiff's federal claims; **3)** plaintiff's request that the court exercise its supplemental jurisdiction **BE DENIED**; **4)** this case be **DISMISSED WITHOUT PREJUDICE** as to whatever relief plaintiff may be entitled to in state court on his state law claims; **5)** acceptance and adoption of this R&R constitute the **FINAL JUDGMENT** in this action.

Under Rule 72(b), Fed. R. Civ. P., any party has fourteen (14) days from service of this R&R within which to file with the District Court any written objections to the proposed findings and recommendations made herein.  Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this R&R within which to file a response to said objections.  Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal of this R&R.  *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 26th day of February, 2015.


/s/Joe B. Brown
Joe B. Brown
United States Magistrate Judge