# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JUSTIN DANIEL NISSEN, | )<br>) |
| Plaintiff, | ) Case No. 3:13-cv-0842 |
| | ) Judge Trauger |
| v. | )<br>) |
| COUNTY OF SUMNER, et al., | )<br>) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

On February 26, 2015, the Magistrate Judge issued a Report & Recommendation ("R&R" (Docket No. 175), to which the plaintiff, Justin Daniel Nissen, has filed timely Objections (Docket No. 182), and the defendants have filed a Response (Docket No. 190). The R&R recommends that (1) the defendants' Motion for Summary Judgment (Docket No. 142) be granted, (2) the plaintiff's federal claims be dismissed with prejudice, (3) the court deny the plaintiff's request to exercise supplemental jurisdiction over his state law claims, and (4) the plaintiff's state law claims be dismissed without prejudice. For the reasons discussed herein, the court will overrule the plaintiff's Objections and accept the R&R.

## BACKGROUND[1]

The plaintiff, who is *pro se*, is an inmate in the Sumner County Jail ("SCJ"). The plaintiff was arrested on August 25, 2012, apparently without a warrant, and was held at the SCJ as a pretrial detainee during the events relevant to this action. He filed this civil rights action against the County and a handful of individual defendants on August 23, 2013, alleging that three officers, Lieutenant David Fitch, Officer Ronald Hopkins, and Derick Case (the "Officer

---

[1] The background is taken from the R&R.

1

Defendants"), used excessive force against him in violation of his rights under the Fourth and Fourteenth Amendments. The plaintiff further alleged that the officers are liable under Tennessee law for torts including assault and battery and that Sumner County ("the County") is liable under 42 U.S.C. § 1983 for the "unskillfulness" of the officers.

The Magistrate Judge described the facts underlying the plaintiff's claims extensively in the R&R, familiarity with which is assumed. Briefly, the plaintiff asserts that, on August 25, 2012, he was arrested and taken to the SCJ on a charge of disorderly conduct. The plaintiff further alleges that he broke his right hand approximately ten days before his arrest. He testified at his deposition that he informed the officers who arrested him (who are not parties to this action) of his injury and also wrote that his hand was broken on an intake form when he arrived at the SCJ. The plaintiff admits that he did not inform the Officer Defendants that his hand was broken until after the events giving rise to his claims arose.

The plaintiff testified at his deposition that, while he was awaiting release on bond, he yelled to his girlfriend, who was being held in an adjacent cell. The plaintiff further testified that, following his attempt to contact his girlfriend, Fitch and Hopkins entered the plaintiff's holding cell and ordered him to sit down and be quiet. The plaintiff admitted that, in response, he "hollered" back at Fitch and Hopkins. The parties appear to agree that, over the next several minutes, the plaintiff verbally "acted out" in his holding cell.

Subsequently, Fitch and Hopkins reentered the plaintiff's cell and again instructed him to sit down and be quiet. The plaintiff admitted at his deposition that he responded by cursing at Fitch. According to the plaintiff's deposition testimony, Fitch and Hopkins began to exit the holding cell but, at the last second, turned around and removed the plaintiff from his cell.

The parties' accounts of the subsequent events differ. The plaintiff claims that, in short, Fitch and Hopkins (1) pulled his arms behind his back and caused harm to his injured hand, despite the plaintiff's informing them at that time that his hand was injured; and (2) caused the plaintiff to fall, perhaps by pushing the plaintiff so that he tripped over his pants. The plaintiff further testified at his deposition that, after he was pulled off the floor by Hopkins and Fitch, Officer Case "manhandled" him in a different cell.

In the R&R, the Magistrate Judge described the events as depicted by a video filed by the defendants and recorded by a security camera at the jail. The recording lacks audio. The Magistrate Judge wrote:

> A copy of the jail security video . . . shows the following: 1) plaintiff pacing back and forth in cell 508 for more than two minutes . . .; 2) Fitch going to the door of the cell and talking to plaintiff; 3) Fitch deciding a few moments later to open the cell door; 4) plaintiff again up and moving around in the cell; 5) Fitch opening the cell door with Hopkins in attendance; 6) Fitch entering the cell with Hopkins remaining in the doorway; 7) Fitch twice pointing his finger at plaintiff and saying something to him; 8) Fitch turning to leave the cell as Hopkins backs away from the door; 9) Fitch suddenly turning back and reentering the cell followed by Hopkins; 10) Fitch and Hopkins pulling plaintiff up/toward them and removing him from the cell.
>
> The security video shows Fitch and Hopkins escorting plaintiff from the sergeant's office and releasing area. . . . The security video shows Hopkins controlling plaintiff on the right side having hooked his left arm under plaintiff's right arm. Plaintiff's right arm also is extended and straight to the rear. Neither Officer has hold of plaintiff's right hand. Plaintiff's demeanor does not appear to be that of someone in pain. The security video also shows that plaintiff's pants had slipped a couple of inches as he exited the cell, and that they were about to slip below his buttocks just prior to exiting the sergeant's office and releasing area.
>
> . . .
>
> The second part of the security video shows plaintiff entering the prisoner entrance and sally area. The security video shows that Fitch has adjusted his hold on plaintiff and, although he still has plaintiff by the left hand, he has pushed plaintiff's left arm up and toward the center of his back in what plaintiff refers to as a "chicken wing hold."

3

> . . .
>
> The third part of the security video shows plaintiff being escorted into the holding cell and incoming area beyond. This part of the security video shows that Fitch has maintained his "chicken wing hold" on plaintiff, and that Officer Hopkins is <u>not</u> using plaintiff's right hand to control him as plaintiff's right arm can be seen fully extended down at his side.
>
> . . .
>
> Plaintiff's knees can be seen to buckle just as he goes through the door from the holding cell into the incoming area. . . . It cannot be determined from the security video whether Fitch pushed plaintiff, or whether plaintiff merely tripped over his pants over which plaintiff appears to stumble at the time he falls. Fitch testified at his deposition that he did not notice plaintiff's pants were down around his ankles until after everyone got off the floor, but not before.
>
> . . .
>
> Fitch testified that, as plaintiff began to fall, he and Hopkins tried to hold him up, but that plaintiff pulled them to the ground. The security video shows that Fitch and Hopkins remain upright initially as plaintiff begins to fall. As he continues to fall, plaintiff pulls Fitch down . . . [the] security video shows Hopkins take a wide stance to brace himself, but the plaintiff's momentum pulls him down as well.
>
> . . .
>
> The security video shows two other officers enter the room as plaintiff struggles with Hopkins, bringing the total number of officers in the room to five. The security video shows plaintiff struggling against Hopkins, at one point nearly throwing him off.

(Docket No. 175 at 13-15.) Officer Case testified at his deposition that he did not enter the room where the plaintiff was struggling until after the plaintiff had fallen to the floor. Case further testified that he was unsure whether the plaintiff was squirming because he was hurt or because he was trying to escape the officers. Case testified that he saw the plaintiff as a threat because of his behavior. Case further testified that, after he and Hopkins helped the plaintiff back onto his feet, the plaintiff resisted when Case and Hopkins were escorting him to a cell to be handcuffed. Case testified that the plaintiff only stopped resisting after Case threatened to spray him with pepper spray.

4

The Officer Defendants and the County filed the pending Motion for Summary Judgment on November 14, 2014. (Docket No. 142.) The defendants argue that there are no genuine issues of material fact in this matter because (1) the Officer Defendants are entitled to qualified immunity; (2) the plaintiff has failed to demonstrate any custom, policy, or practice of the County that violates his rights; (3) the Fourth Amendment does not apply to the plaintiff; (4) the Officer Defendants did not violate the plaintiff's Fourteenth Amendment rights; (5) the Officer Defendants did not commit battery; and (6) the plaintiff's cause of action under Tenn. Code. Ann. 11-47-190 must be dismissed because the statute does not exist.

The plaintiff opposed the motion on December 16, 2014 (Docket No. 156), and the defendants filed a Reply in support of their motion on December 30, 2014 (Docket No. 163). The Magistrate Judge issued the R&R on February 26, 2015. Specifically, the Magistrate Judge concluded that (1) the defendants are entitled to summary judgment as to the plaintiff's Section 1983 claim premised on his Fourth Amendment rights because the plaintiff was a pretrial detainee at all times relevant to the action and, therefore, was not protected under the Fourth Amendment; (2) the undisputed facts support the conclusion that the Officer Defendants acted in a good faith effort to maintain and restore discipline and, therefore, there is no Fourteenth Amendment violation and the officers are entitled to summary judgment on the ground of qualified immunity; (3) because there is no underlying constitutional violation attributable to the Officer Defendants, the court cannot impute a violation to their employer, the County, and, consequently, the County is also entitled to summary judgment; (4) even if the evidence demonstrated a constitutional violation, the plaintiff has failed to set forth any evidence to support his claim that the County is liable because it has a policy of inadequate supervision and discipline of officers who employ excessive force; and (5) the court should decline to exercise its

supplemental jurisdiction over the plaintiff's state law claims for assault and battery, which were pled improperly as claims under Alabama law (Section 11-47-190).

## **ANALYSIS**

### **I.    Standard of Review**

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a specific objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993). Objections must be specific; an objection to the report in general is not sufficient and will result in waiver of further review. *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

### **II.    The Plaintiff's Objections to the R&R**

The plaintiff filed his Objections to the R&R on March 16, 2015. In a 16-page memorandum that consists primarily of block quotations from various secondary sources and (often uncited) federal case law, the plaintiff appears to make four objections with respect to the R&R: (1) that "summary judgment" as a procedural mechanism is controversial; (2) that the Magistrate Judge erred because he did not render appropriate assistance to the *pro se* plaintiff, including by appointing an attorney; (3) that the Magistrate Judge's conclusion as to the weight of the evidence was inaccurate; and (4) that the Magistrate Judge improperly concluded that the Officer Defendants were entitled to qualified immunity at the summary judgment stage. The plaintiff also requests that this court permit the parties to engage in oral argument with respect to the plaintiff's Objections. Upon review of the Magistrate Judge's findings, the Objections, and the record, the court concludes that the plaintiff's Objections must be overruled.

**A. The Plaintiff's First, Second, and Third Objections Are Not Specific and Will Be Overruled**

As an initial matter, the plaintiff's first objection is a general objection to Federal Rule of Civil Procedure 56, not an objection to a specific issue addressed by the R&R or specific finding contained therein. Instead, it appears to be a broad criticism of Rule 56 as a pretrial mechanism for disposition and, therefore, the entirety of the Magistrate Judge's report. It is well settled that "a general objection to the entirety of the magistrate judge's report has the same effect as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Accordingly, the first objection will be overruled.

Similarly, the plaintiff's second and third objections are not specific and, therefore, will be overruled. The plaintiff's second objection does not relate to the R&R and instead, asserts that the Magistrate Judge failed to provide the plaintiff with proper assistance. Such an objection is not specific to the R&R and, accordingly, it will be overruled.

The plaintiff's third objection essentially constitutes a general disagreement with the Magistrate Judge's conclusion that there was no genuine issue of material fact in the record with respect to his Section 1983 claims. The third objection primarily rehashes the arguments made in the plaintiff's Response in opposition to the defendants' summary judgment motion related to inconsistencies in the record. It is well settled that such an objection is insufficiently specific to trigger this court's *de novo* review. With respect to objections lacking specificity, the Sixth Circuit has explained:

> The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. . . . We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error. We should not permit appellants to do the same to the district court reviewing the magistrate's report.

*Id.*

The plaintiff's first three objections consist of his general disagreement with (1) the Federal Rules of Civil Procedure; (2) the Magistrate Judge's treatment of the plaintiff as a party; and (3) the Magistrate Judge's determination as to the weight of the evidence in the record. These objections fail to raise specific concerns with respect to the R&R. Accordingly, the court finds *de novo* review unnecessary and will overrule the plaintiff's first three objections.

### B. The Plaintiff's Fourth Objection Will Be Overruled

The plaintiff's fourth objection is specific to the R&R. The plaintiff argues that the Magistrate Judge erred when he concluded that qualified immunity shielded the Officer Defendants because the undisputed facts establish that the officers acted in good faith to maintain discipline at the SCJ and, therefore, the plaintiff's Fourteenth Amendment rights were not violated. The plaintiff's "objection" consists in its entirety of a block quote copied from a case that the plaintiff cites as *McCloskey v. Courtnie*, No. 05-cv-4641, 2012 WL 646291 (N.D. Cal. Feb. 28, 2012).[2]

"Qualified immunity shields from liability for civil damages those officials whose conduct does not violate clearly established statutory or constitutional rights of which a

---

[2] The court notes that it has been unable to find the case as cited by the plaintiff. However, even if the court were able to locate the correct opinion, the circumstances of the *McCloskey* case (if it exists) as described in the quote submitted by the plaintiff are distinguishable from this case. There, before reaching the issue of qualified immunity, the court had concluded that a dispute of material fact existed as to whether an incident of excessive force had occurred. The quote, as copied by the plaintiff, states: "Like in *Lolli*, the core issue for Plaintiff's excessive force claim is a factual determination of the extent of force that was used, and whether that amount of force was excessive given the circumstances. . . . Because the facts relevant to the issue of qualified immunity are inextricably intertwined with the *disputed facts* relevant to the issue of excessive force, defendants are not entitled to summary adjudication on the issue of qualified immunity." (Docket No. 182 at 14.) Here, in the R&R, the Magistrate Judge first concluded that no questions of fact existed with respect to a constitutional violation before concluding that the officers were entitled to qualified immunity as to the plaintiff's claims.

reasonable person would have known." *Derfiny v. Pontiac Osteopathic Hosp.*, 106 F. App'x 929, 934 (6th Cir. 2004) (internal citation omitted). In analyzing qualified immunity claims, courts employ a sequential analysis prescribed by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001). "First, plaintiffs must show that defendants deprived them of a right protected by the Constitution. Second, this right must be so clearly established that a reasonable officer would understand that his or her actions would violate that right." *Derfiny*, 106 F. App'x at 934. Courts routinely employ this two-step analysis at the summary judgment stage. *See, e.g.*, *Johnson v. Johnson*, 515 U.S. 304 (1995); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Summers v. Leis*, 368 F.3d 881 (6th Cir. 2004).

Here, the Magistrate Judge, upon review of the undisputed facts, concluded that it was undisputed that the Officer Defendants did not deprive the plaintiff of his constitutional rights. Consequently, the Magistrate Judge determined that the Officer Defendants are entitled to qualified immunity and therefore, summary judgment is appropriate for the officers as to the plaintiff's claims.

The plaintiff has failed to provide any persuasive legal authority to support his argument that the Magistrate Judge improperly made a determination as to qualified immunity at the summary judgment stage. Furthermore, the plaintiff has failed to make a specific objection with respect to the facts in the record that support the Magistrate Judge's conclusion. Accordingly, the plaintiff's fourth objection will be overruled.

**C. The Plaintiff's Request for Oral Argument Is Denied**

The plaintiff's Objections to the R&R will be overruled and the court will not require further argument in this case, oral or written. Therefore, the plaintiff's request for oral argument will be denied.

## CONCLUSION

For these reasons, the plaintiff's Objections to the Report and Recommendation are **OVERRULED**. The Report and Recommendation (Docket No. 175) is **ACCEPTED** and made the findings of fact and conclusions of law of this court. For the reasons expressed therein, it is hereby **ORDERED** that the defendants' Motion for Summary Judgment (Docket No. 142) is **GRANTED**, and the plaintiff's federal claims are **DISMISSED WITH PREJUDICE**. It is further **ORDERED** that the plaintiff's request that the court exercise its supplemental jurisdiction is **DENIED**, and the plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**. It is further **ORDERED** that the plaintiff's request for oral argument is **DENIED**.

Entry of this Order shall constitute final judgment in this action.

It is so **ORDERED**.

Enter this 19th day of May 2015.

ALETA A. TRAUGER
United States District Judge